## WOODARD v. WOODARD.

1. DEBTS OF INTESTATE—MORAL OBLIGATIONS.—An administrator is liable to account to a complaining distributee for plaintiff's share of the estate money paid by the administrator to attorneys employed by him to assist in the prosecution of the intestate's slayer, who rested his defence to the charge of murder on allegations affecting the moral character of intestate. The courts cannot enforce mere moral obligations.

2. CLERICAL ERROR IN DECREE.—A clerical error of the Circuit Judge in heading his decree with the title of the cause as originally instituted, instead of with the title which attached on the substitution of the administratrix of the original plaintiff as a party after the death of her intestate *pendente lite*, was an immaterial error.

3. COMMISSIONS.—An administrator is not entitled to commissions on money which he is required to refund and pay over to a distributee,

he having erroneously credited himself with this same money in his settlement in the Probate Court, and, it is supposed, was then allowed all commissions claimed by him.

Before FRASER, J., Sumter, November, 1890.

The decree of the Circuit Court was as follows:

For the purposes of the hearing, and for this purpose only, the allegations in the complaint and answers were admitted to be true, with the additional fact, that upon the trial of the case therein referred to, William A. James was acquitted by the jury. I have not been able to find any authority which will justify me in holding that the administrator of Stephen D. Woodard had a right to use a portion of his estate to pay fees to counsel employed by him to assist the solicitor in prosecuting the case against William A. James, charged with the murder of the deceased. In this view of the case, I am relieved of the duty of commenting in any way upon the circumstances of this unfortunate case. The amount so improperly paid out was twelve hundred and fifty dollars.

It does not appear when these payments were made, and there is nothing in the statements from which the court can make a calculation as to the amount of interest chargeable against the administrator. Addison S. Woodard was entitled to one sixth ($\frac{1}{6}$) of the estate, and the other distributing parties defendant in this case made no claim. Addison S. Woodard has departed this life since the commencement of this action, and the case has been continued in the name of his personal representative, Martha J. Woodard, administratrix. There seems to be no other item in the account of J. Frierson Woodard, administrator of Stephen D. Woodard, which is disputed now.

It is therefore ordered and adjudged, that Martha J. Woodard, as administratrix of Addison S. Woodard, do recover against J. Frierson Woodard, administrator of Stephen D. Woodard, $\frac{1}{6}$ of twelve hundred and fifty dollars of the estate of the intestate so improperly paid out, with proper interest thereon. It is ordered, that it be referred to the master, to inquire and report at what time the said sum commenced to bear interest, and what is the amount of principal and interest on the said amount. It is or-

dered, that on the coming in of the said report, the parties have leave to apply for any order proper to carry out this decree.

The defendant, J. Frierson Woodard, appealed on the following grounds:

1. That, as it is respectfully submitted, his honor erred in holding and adjudging that the administrator of Stephen D. Woodard had no right to use a portion of his estate to pay fees to counsel employed by him to assist the solicitor in prosecuting the case against William A. James, charged with the murder of the deceased.

2. That, as it is respectfully submitted, his honor erred in not holding and adjudging, that in view of the admitted facts of the case, the expenditures by the defendant, administrator as aforesaid, in paying counsel employed as aforesaid, were proper expenditures of the estate of the decedent for the protection of his good name and reputation, at least to the extent of reasonable and proper fees for such services, and to such extent should be allowed and credited to the said administrator in the settlement of decedent's estate.

3. That, as it is respectfully submitted, his honor erred in adjudging that Martha J. Woodard, as administratrix of Addison S. Woodard, do recover against J. Frierson Woodard, administrator of Stephen D. Woodard, one-sixth of twelve hundred and fifty dollars of the estate of the intestate, as improperly paid out, with proper interest thereon; and in referring it to the master to inquire and report at what time the said sum commenced to bear interest, and what is the amount of principal and interest on the said amount, without allowing, or directing the master to allow, to the defendant, administrator as aforesaid, the commissions allowed by law for paying out moneys as administrator; and that his honor aforesaid should have allowed, or directed the master to allow, such commissions.

4. That the said decree or judgment was entitled and was endorsed as in a cause in which Addison S. Woodard was at the time of filing said decree plaintiff, and the defendants above named were the defendants. That, as shown by the record, Addison S. Woodard had died before the hearing of the action by his honor;

and that, therefore, the said decree or judgment was improperly filed by the clerk, and said decree or judgment should be set aside or declared null and void.

*Messrs. Haynsworth & Cooper*, for appellant.

*Messrs. Earle & Purdy*, contra.

April 19, 1892.   The opinion of the court was delivered by

MR. JUSTICE McGOWAN.   The complaint alleges that Stephen D. Woodard, late of the County of Sumter, departed this life intestate, seized and possessed of a considerable estate, leaving as his heirs at law the plaintiff, his brother, and the defendants, Nancy Woodard, his mother, Henry Woodard and J. Frierson Woodard, his brothers, and Winnie S. Stuckey and Mary E. Stuckey, his sisters; that J. Frierson Woodard was appointed administrator of the estate, and plaintiff is informed and believes that said administrator has not accounted for certain specified personal property belonging to the estate, and had paid out, without warrant or authority of law, various sums of money, amounting in the aggregate to $1,250, for some services rendered by certain gentlemen of the bar for and in behalf of the said J. Frierson Woodard in his own right and not for the benefit of the said estate; and that upon an *ex parte* application, of which the plaintiff had no notice, the said J. Frierson Woodard was improperly and illegally discharged as administrator as aforesaid by the Probate Court for said county; that Nancy Woodard, Henry Woodard, Winnie S. Stuckey, and Mary E. Stuckey were made defendants, because they refused to join as plaintiffs in the action. Wherefore the plaintiff prayed that the pretended discharge of the said J. Frierson Woodard as administrator should be set aside, and the said administrator aforesaid be required to account for his actings and doings, &c.

J. F. Woodard answered, denying that he was illegally discharged as administrator, or that he had failed to account for any property of the estate in his hands to be administered.   He admitted, however, that as administrator he paid out the sums of money referred to in the complaint, aggregating $1,250, as stated,

but denied that he paid such sums without warrant or authority of law, or in his own behalf, and he denied that said payments were not for the benefit of the estate. "He alleges that the intestate, the brother of the plaintiff as well as of this defendant, was intentionally shot down and killed suddenly in the main street of the town of Bishopville, being engaged in no conflict or even altercation with his slayer; that it was alleged on the part of the slayer and by his friends that he was justified in so slaughtering the deceased, who, it was alleged, had been guilty of such ungentlemanly and insulting and dishonoring conduct towards, and remarks to or about, an unmarried daughter of the slayer, that he, the deceased, deserved to be shot down as he had been, and merited the ignominious death which befell him; that rumor was busy in besmirching the fair reputation of the deceased, who had occupied a respectable station in society, had demeaned himself as a high-toned and honorable gentleman, and had meritoriously achieved for himself a good name and reputation; that it was known that the slayer, in his approaching trial for the said homicide, would seek an opportunity to justify himself, or diminish the criminality of his act, by endeavoring to establish the truth of the allegations above referred to, of ungentlemanly and insulting and dishonoring conduct and remarks of the deceased towards, and of or about, the said young lady; and the nearest relatives and heirs of the deceased (except, perhaps, the plaintiff) felt that it was due to the memory of the deceased, and that it was an obligation of the highest nature upon them, that at least a portion of deceased's estate should be used in the vindication of his name and character from charges which menaced his name and character with obloquy; that for such vindication it was necessary to employ counsel to assist the State's attorney in the preparation for and the conduct of the said trial; and that the lawyer's fees, the payment of which is objected to in the complaint, were paid to the attorneys for their services in the preparation for and conduct of said trial; that the deceased left an estate of the value of more than $10,000 over and above all his indebtedness; that the payment of said fees by the legal representative of the deceased out of his estate was a proper expenditure, and for the benefit of the estate, &c."

The plaintiff died pending the suit, and Judge Witherspoon, on October 26, 1889, passed an order, by which the action was continued in the name of Martha J. Woodard, his administratrix.

The cause came on for trial before Judge Fraser, who, stating that for the purposes of the hearing, and for this purpose only, the allegations in the complaint and answer were admitted to be true, with the additional fact, that upon the trial of the case therein referred to, William A. James was acquitted by the jury, held that he was not able to find any authority which would justify him in holding that the administrator of Stephen D. Woodard had a right to use a portion of his estate to pay fees to counsel employed by him to assist the solicitor in prosecuting the case against William A. James charged with the murder of the deceased; and he therefore decreed that Martha J. Woodard, as administratrix of Addison S. Woodard, do recover against J. Frierson Woodard, administrator of Stephen D. Woodard, one-sixth ($\frac{1}{6}$) of $1,250 of the estate of the intestate so improperly paid out, with proper interest thereon, and referred it to the master to inquire and report what amount of principal and interest was due, &c.

From this decree the defendant appeals to this court upon several grounds. Inasmuch, however, as we think the real and only question in the case now is, whether the administrator of the estate of the intestate, Stephen D. Woodard, was authorized by law to make the expenditure of $1,250 for the professional services referred to, we need not set out in detail the grounds of appeal, which are all in the "Brief."

There can be no question as to the great importance of moral obligations, but the court has no power to enforce them as such. They lie beyond the scope of human tribunals for the administration of justice. As we understand it, our duty is simply to administer the law of the land as we conceive it, and we think it would be not only a grave but futile and dangerous error to attempt to reach beyond that. The universal law of civilized nations makes it the first duty of his legal representative to bury the body of the deceased in a decent manner suitable to the estate he has left behind him. When that is done, the law declares that his assets, after proper allowances for the expenses

of administration, shall be applied to the payment of his debts in a particular order: (1) Funeral and other expenses of the last sickness; (2) debts due to the public, &c., &c. It is true that in the case of *Percival* v. *Epsy McVoy*, Dudley, 337, the majority of the court held that the aforesaid act, in reference to "funeral and other expenses of the last sickness," should be construed liberally, as it was in accordance with the principles of Christian civilization, to let it enure to its proper end, the full relief of the sick and infirm." But the expenses here in question were never *debts* of the intestate. They were incurred after his death, and we can find no authority for placing them in the class, either of "funeral and other expenses of the last sickness" or of the "expenses of administration." While we may well understand and appreciate the natural feeling which induced the expenditures, we cannot say that they were for the benefit of the estate, *in the sense of the act or allowed by law.*

We think there is nothing substantial in the circumstance, that Judge Fraser put at the head of his decree the title of the case as it was originally instituted, and as the defendants' attorneys did in their printed argument for this court; but the decree recites the fact, that "Addison S. Woodard had died since the commencement of the action, and the case had been *continued* in the name of his representative, Martha J. Woodard, administratrix;" and the judgment was, "that Martha J. Woodard, as administratrix of Addison S. Woodard, do recover against J. Frierson Woodard, administrator of Stephen D. Woodard, one-sixth," &c., &c. It was a mere clerical mistake, and a very natural one, and did not involve any substantial right. See *Henlein* v. *Graham*, 32 S. C., 307.

We do not think this is an ordinary accounting by the administrator for a portion of the estate of his intestate unaccounted for, in which he would certainly be entitled to commissions; but we suppose the administrator received his commissions for paying out the fund when the settlement of the estate took place in the probate office. We are constrained to concur with the Circuit Judge.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.